### PARTITION OF ANCESTRAL PROPERTY.

Common Pleas Court of Licking County.

#### JOHN W. KING ET AL V. JOSHUA S. ANDERSON.

Decided, April Term, 1908.

*Descent of Ancestral Property—Partition of—Releases in the Form of Warranty Deeds—Ancestral Character of Property not Changed Thereby—Widow of Parcener Dying Without Issue Takes Life Estate Only—Estoppel.*

Property does not lose its ancestral character by reason of the fact that in making a partition thereof the parceners gave releases in the form of deeds of general warranty for the sole purpose of effecting an assignment to each of the parties; and upon the death of one of the parceners without issue, his widow takes a life estate only, the fee going to brothers and sisters of the decedent.

*John M. Swartz* and *R. W. Howard,* for plaintiffs.
*J. R. Davies,* contra.

SEWARD, J. (orally).

This case comes into this court on appeal from the probate court. The suit is brought seeking partition of several tracts of real estate, but the only tract in controversy here is the fifth tract described in the petition. The question involved is whether that was ancestral property in the decedent or property that came to him by purchase.

John W. Anderson, the father of Joshua S. and John R. Anderson, died intestate, seized of about 140 acres of land, including the fifth parcel in the petition described. He left a widow, and two sons, Joshua S. and John R. Forty-one and twenty one-hundredths acres were set off to the widow for her dower. It was set off to her and conveyed to her by their joint deed. April 4, 1883, they divided the balance, 104 26-100 acres, each deeding to the other 52 13-100 acres by different descriptions, there being 52 13-100 acres in each deed. The consideration named in the deeds was $1,400. In the deed from Joshua S. to John R.,

the one-half is recited.   In the other, he conveys the whole; and these deeds contain covenants of general warranty.          ,

Subsequent to these conveyances, in 1898, John R. died, leaving a widow, but no children.   The widow of John R. conveyed the land of which he died seized to one Phillippi, under the assumption that the land came to John by purchase and, therefore, she inherited under the statute in that respect.

The defendant, Joshua, claims that the land of which his brother died seized was ancestral property, and that the land passed to him as heir of John subject to the widow's life estate. The plaintiffs claim that the real estate was not ancestral property, and that, upon the death of John the same vested in his widow in fee.

The claim is made by the plaintiffs' counsel that this deed from Joshua S. to John R., contains covenants of general warranty, and works an estoppel upon Joshua to claim any interest in the real estate.   Joshua claims that it was ancestral property in John R., who died, and upon John's death the title passed to the widow for life and remainder to him, subject to the widow's life estate.   And that is so, if it is ancestral property.

The deeds were made on the same date—the 4th of April.   I do not remember the year, and it is not material.   These deeds passed between John R. and Joshua S., and the deed from the boys to their mother for the dower interest.

The court does not think the question of the dower interest cuts any figure in relation to the controversy between the parties now before the court.   It is claimed, by virtue of the fact that these deeds contained covenants of general warranty, that Joshua is estopped from claiming title, he having made a warranty deed to John R.; and that any subsequent title that John R. might acquire, if the title were defective, that Joshua would be estopped from claiming any interest in it.

It is held in the 59th Ohio State, page 96, that it does not make any difference, if deeds are passed by tenants in common, in order to convey to each tenant his particular portion of the land which they held in common before, that it does not affect the

question of the title to the property, being ancestral property. That it is only where it came by purchase.

There are three ways of acquiring title to real estate in Ohio— by descent, by deed of gift, and by purchase. If this property went by descent, it was ancestral property in these boys. If it went to either of them by purchase from the other, then the ancestral quality of the property was destroyed, and it became property by purchase, and would go to the widow upon the death of her husband without leaving any heir to inherit it; and if it was ancestral property, it would go to her for life, and then to the brothers of the whole or half blood. This is a brother of the whole blood.

The case in the 59th Ohio State, page 96, is entitled *Carter et al* v. *Day et al.* It holds:

"1. The line of descent is not broken by partition of an estate theretofore held in common, whether the partition be made in a legal proceeding, or by the interchange of mutual releases. In either case the title of each parcener in the share set off to him in severalty remains the same as that by which his undivided interest in the land was held.

"2. Where the estate in common came by descent, devise, or deed of gift, the parcel allotted to a parcener who dies seized of the same descends according to the provisions of Section 4158 of the Revised Statutes.

"3. When partition is made by mutual releases, they should be read and construed together, in the light of the circumstances attending their execution; and it is competent to show that their only purpose was to accomplish the partition, and no other consideration passed between the parties, though a pecuniary consideration be expressed in the deeds."

It looks to the court as though that covers the case.

"A partition of land by action, the authorities maintain, creates no new title to the shares set off to the parceners in severalty. While its effect is to locate the share of each in his allotted parcel of the land, and extinguish his interest in all the others, the title by which he holds his divided share is the same as that by which his undivided interest in the estate in common was held."

The opinion is quite lengthy, and the court will not go into it further.

It is held in the 17th Ohio State, page 527, that where land came to tenants in common, and partition proceedings were commenced by some of the tenants against others, and some of the tenants elected to take the property at the appraised value, that the interest that the tenant took at the appraised value came by purchase; and that the interest that he received by descent was ancestral. That is a case where there were nine children, and one-ninth came by descent to each. · Two of the parceners elected to take at the appraisement, and it was held by the Supreme Court that, in so far as the election to take at the appraisement, that portion of it came by purchase, but the other was ancestral property.

It is claimed that this warranty deed cuts some figure in the case; and it would if the title came by purchase, possibly; but if it was simply a scheme to give to each parcener his particular portion of the land which they held in common, then it would not cut any figure, as the court views it, and it would not estop the grantor from claiming title by descent from his brother.

I am cited to the 14th Ohio State, page 341, a decision by · Judge Ranney. The title of the case is *Jesse Hukill* v. *Steubenville & Richmond Plank Road Co.* The second branch of the syllabus is as follows:

"Where in a deed, in the ordinary form of bargain, sale and release, and which purports only to convey to the grantees 'all the estate, right, title, interest, claim and demand, both in law and equity,' of the grantors, 'of, in and to the said premises, and every part thereof,' containing no recital or other description whatever, of any particular interest owned or possessed by the grantors, or intended to be conveyed, a covenant is inserted by which the grantors agree to 'warrant and forever defend the said premises against all persons claiming or to claim, by, from or under them, their heirs or assigns,' such covenant is only co-extensive with the grant, and binds only the vested interests of the grantors in the property at the time, and does not extend to an after-acquired title."

And the court held in this case that that does not work an

estoppel on the part of the grantor as to any future title.   I read from page 343:

"But the court is also of the opinion that the covenant works no such consequence as is supposed,"—that is, an estoppel— "and that it is not of the slightest consequence whether it is in or out of the deed.  The deed is in the ordinary form of bargain, sale and release, and purports only to convey to the grantees, 'all the estate, right, title, interest, claim and demand, both in law and equity, of the said Michael V. Brocaw and Magdalene, his wife, of, in and to the said premises, and every part thereof.'  It contains no recital, or other description whatever, of any particular interest owned or possessed by the grantors, or intended to be conveyed."

But what were these parties attempting to do?  They were attempting to divide up this land and each get his particular portion of it;  Joshua to get his 52 13-100 acres out of the whole piece, and John to get 52 13-100 acres out of the whole piece— the 145 acres, and to give the widow a sufficient portion which would satisfy her dower interest.  That is what they were attempting to do.  They put in each deed a consideration of $1,400; each deed was made on the same date; and the court thinks that these parties were simply attempting to do, and were doing, at that time, what they had a right to do;  to assign to each his particular portion in the entire tract of land;  and that this property is ancestral property, and, upon the death of John R., without issue, the title, in fee simple, passed to his brother, Joshua S.; and there may be a decree accordingly.